Joseph Meltzer and Bertha Meltzer v. Commissioner.
Meltzer v. Commissioner
Docket No. 4513.
United States Tax Court
1945 Tax Ct. Memo LEXIS 155; 4 T.C.M. (CCH) 638; T.C.M. (RIA) 45209; June 20, 1945
*155 Deductions: Bad debts: Year of worthlessness. - Where debtor had no credit and since 1935 had liabilities approximately $28,000 in excess of his assets, the taxpayer cannot deduct in 1941, the amount of bad debt owed him by such debtor since the debt had become worthless long before 1941. SMITH Memorandum Findings of Fact and Opinion SMITH, Judge: This proceeding is for the redetermination of a deficiency in income tax for the calendar year 1941 in the amount of $4,571.65. The petitioners allege that the respondent erred in the determination of the deficiency by disallowing the deduction from gross income of $14,250 bad debts. Findings of Fact The petitioners, husband and wife, are residents of New York City. They filed a joint income tax return for the calendar year 1941 with the collector of internal revenue for the third district of New York. Joseph Meltzer will hereinafter be referred to as the petitioner. In the joint income tax return for 1941 the petitioner claimed the deduction from gross income of $13,000 as a bad debt. This deduction was disallowed by the respondent in the determination of the deficiency. Petitioner now alleges that the total amount *156 of bad debts to which he is entitled as a deduction is in the amount of $14,250. The petitioner is a civil engineer with an office at 10 East 40th St., New York City. He is associated in business with Herman M. Braloff. In 1929 Victor Mayper, a friend of petitioner, who was engaged in the designing and supervision of the construction of speculative industrial buildings and apartment houses, and who had had considerable income for a number of years from the practice of his profession, approached the petitioner for a loan of $13,000. He stated that he would give a mortgage upon his residence in Douglastown, Long Island, as security for the loan. Mayper had built this residence in 1928 at a cost of approximately $50,000. There was at the time a first mortgage on the property of $20,000 and a second mortgage of $12,500, though these mortgages by 1929 may have been curtailed by the amount of a few hundred dollars. The petitioner did not have the $13,000 to loan him but thought his associate in business, Braloff, might be willing to make the loan. Braloff had the money and made the loan. As security for the loan Mayper gave a personal bond to Braloff in the amount of $13,000, a note *157 for the same amount bearing interest, and a third mortgage upon his residence in Douglastown. The principal security of Braloff was, however, the petitioner's bond in the sum of $13,000 guaranteeing the payment of the note and mortgage pursuant to its terms. When the time came for the payment of interest upon the note Mayper was without funds to make any payment thereon. Braloff then requested the petitioner to make good on his bond. After some negotiations between Braloff and the petitioner, Braloff accepted $10,000 in cash from the petitioner in satisfaction of his bond. The petitioner then became subrogated to all of Braloff's rights in respect of the loan which he had made to Mayper. The petitioner then looked to Mayper for the payment of interest upon his note. By reason of the financial crash of 1929 and the subsequent decline in building operations, Mayper was not able to make any payment on the note. He did, however, give several notes to the petitioner for the amount of the interest which was due but unpaid. Through his friendship for Mayper and for the purpose of tiding him over the financial depression the petitioner made additional advances to Mayper as follows: 2 months prior to August 7, 1930
$ 250
August 7, 1930
1,500
June 17, 1931
500
March 16, 1932
1,000
November 25, 1932
1,000
*158 Mayper's financial condition continuously deteriorated. He was not able to make any payments to the petitioner upon his indebtedness to him. In 1935 the holder of the first mortgage on Mayper's residence at Douglastown foreclosed the first mortgage on the property, which was sold at a price of approximately $24,000, which was only sufficient to pay off the first mortgage and arrears in taxes. Neither the holder of the second mortgage nor the petitioner obtained deficiency judgments against Mayper. From 1935, after the foreclosure, until 1941, the financial condition of Mayper did not improve. After 1935 Mayper had no real property and no personal property except wearing apparel of less than $300 in value and office furniture of $50 in value. He had no credit whatever except a limited amount from a blueprinter. From 1935 on his liabilities, including indebtedness to the petitioner, were approximately $28,000 in excess of assets. In June, 1937, Mayper was put through supplementary proceedings in respect of a debt of $1,282.70. This debt was compromised by the payment of $310 by Mayper with money which he borrowed from another party. He made this compromise settlement in order to *159 avoid bankruptcy proceedings. In 1940 the affairs of Mayper were poor as described by Mayper and "sad" as related by him to Joseph Meltzer. The petitioner made many demands upon Mayper for at least installment payments upon his indebtedness to him. Mayper frankly stated that he was not in a position to make any payment until business improved. In 1941 the petitioner made a final demand upon Mayper for the payment of his money but Mayper stated that his financial condition had not improved - that he was in no position to make payment. The petitioner threatened to obtain a judgment against Mayper for the payment of his indebtedness and Mayper told him that if he did it would simply force him into bankruptcy. He then was requested to submit to an examination by his attorney as to his financial condition. He readily submitted to such examination on December 18, 1941, and stated that besides having no assets of any material value he owed others besides petitioner approximately $7,500 and that by reason of priorities resulting from the war situation he did not expect that his financial condition would improve to enable him ever to make any payment upon his indebtedness to the petitioner. *160 Upon the basis of these facts the petitioner claimed the deduction from his gross income for 1941 of the $13,000 which was disallowed by the respondent in the determination of the deficiency. The debt owed by Victor, Mayper to the petitioner in the amount of $14,500 became worthless prior to 1941. Opinion The only question presented by this proceeding is whether the debt owed by Victor Mayper to the petitioner in the amount of $14,250 became worthless in 1941. Section 23 (k) of the Internal Revenue Code, as amended by section 124 (a) of the Revenue Act of 1942, permits the deduction from gross income of "Debts which become worthless within the taxable year." Prior to that time that section of the Code permitted the deduction from gross income of "Debts ascertained to be worthless and charged off within the taxable year." The amendment was made effective "with respect to taxable years beginning after December 31, 1938." See section 124 (d) of the Revenue Act of 1942. In Harris v. Commissioner (C.C.A., 2nd Cir.), 140 Fed. (2d) 809, the court had before it the question as to whether a debt claimed to have been ascertained to be worthless and *161 charged off in 1936 was a legal deduction from the gross income of that year. In its opinion the court said: * * * There is no doubt, nor is any claim to the contrary here made that as the law then stood the petitioner was bound to make the charge-off in the year in which he first ascertained the debt to be worthless * * * In our view the "subjective test" is the right one, and the proper year to make the charge-off is that in which the taxpayer actually makes the determination of worthlessness. Rosenthal v. Helvering (2 Cir.) 124 Fed. (2d) 474; Curry v. Commissioner (2 Cir.) 117 Fed. (2d) 307. * * * We think it quite clear that the question before us in this proceeding is not when the debt of Mayper to the petitioner was ascertained by the petitioner to be worthless and charged off, but rather the objective test as to when it actually became worthless. The petitioner contends that it actually became worthless in 1941; that up until then he had hopes of ultimately collecting his debt from Mayper, because Mayper had been successful in his profession prior to 1930 and because there was a probability that he would again regain financial ability to pay *162 his debts. He also argues that the entrance of the United States into war with Germany and Japan in December, 1941, was an identifiable event which made the debt worthless in 1941. We do not think that the petitioner's contention has a realistic basis. By 1935 Mayper had lost all his property and was indebted to others besides the petitioner. He appears never to have been able to make more than his living expenses after 1935. On cross-examination Mayper testified as follows: Q. Now, at the time in 1941 in which you made an affidavit or statement to counsel of petitioner, you say you are indebted to him in the sum of $5,370 and then the further sum of $13,000; and you had no means or income to pay that indebtedness or any part of it; that would be true ever since 1935, would it not? A. Yes. Q. You say, then, that you have no personal property or any interest therein, and that condition has been true since 1935, has it not? A. Yes. Q. You say you have no personal property other than wearing apparel of the value of less than $300, and office furniture of the value of not exceeding $50; I will ask you if that position has not obtained since 1935 with reference to your affairs?
*163 A. I would say so, yes. It seems to us that the evidence clearly shows that Mayper's debt to the petitioner became worthless long prior to 1941 and that there was no happening in 1941 which made the debt worthless in that year. In our opinion the respondent properly denied the deduction of the claimed debt from the petitioner's gross income for 1941. Decision will be entered for the respondent.